UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| RURAL COALITION, et al., ) | |
| ) | Case No. 20-73220 |
| *Petitioners*, ) | |
| ) | EPA No. EPA-HQ-OPP-2013-0250 |
| v. ) | |
| ) | MOTION TO REOPEN PETITION, |
| U.S. ENVIRONMENTAL ) | ORDER A DEADLINE TO |
| PROTECTION AGENCY, ) | COMPLETE REMANDED |
| et al., ) | PROCEEDINGS, AND TO |
| ) | ENFORCE ORDER REQUIRING |
| *Respondents*, ) | STATUS REPORTS |
| ) | |
| SYNGENTA CROP ) | |
| PROTECTION, LLC, ) | |
| ) | |
| *Intervenor*. ) | |
| ) | |

On December 14, 2021, this Court granted Respondent, the U.S. Environmental Protection Agency (EPA), a partial remand without vacatur to reevaluate one aspect of one of EPA's orders on review. Remand Order, Dkt Entry 31 (Dec. 14, 2021). Over three years later, EPA has not completed the remand proceedings. Petitioners, National Family Farm Coalition, Center for Food Safety, Center for Biological Diversity, and Pesticide Action Network North America, respectfully request that the Court reopen this matter to order EPA to complete remanded proceedings and issue a revised Atrazine Interim

Registration Review Decision by June 30, 2025. Petitioners also ask the Court to enforce its Order requiring status reports every 90 days until EPA completes the remand proceedings. *Id.* Petitioners provide the following grounds and argument in support of this motion along with the declarations filed herewith.

## INTRODUCTION

There are compelling reasons for this Court to order a deadline for EPA to complete its reevaluation of just one issue in just one of the orders on review in this matter—the concentration of atrazine in water that triggers monitoring or mitigation. It has been more than four years since EPA issued its order concerning the pesticide atrazine, and over three years since this Court granted a remand without vacating the order. EPA has delayed so long that the Clerk of Court administratively closed this matter in November 2024. This amount of time is unreasonable and has resulted in undue delay of Petitioners' right to judicial review of EPA's orders in their entirety, which are unlawful and unsupported in other respects, in addition to the issue concerning concentration of atrazine in water.

During this unreasonable delay, serious harm to people, plants, and wildlife is ongoing from uses of atrazine. Nor is EPA making any progress to reduce these harms. EPA's latest mitigation proposal would reduce atrazine pollution below the level that EPA recognizes is harmful to wildlife in a *mere 1%* of the 11,249 atrazine-contaminated watersheds. This Court has the authority to order a deadline, and one is warranted here.

1. <u>Procedural Posture</u>

On October 30, 2020, Petitioners filed the Petition for Review of three EPA orders, each entitled "Interim Registration Review Decision" ("IRRD"), concerning the herbicides atrazine, propazine,[1] and simazine. Petition for Review, Dkt Entry 1-6 (Oct. 30, 2020). Pesticide Registration Review is required by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") to ensure that each pesticide continues to satisfy the FIFRA standard for registration, including that the pesticide will not generally cause unreasonable adverse effects on the

---

[1] There are no longer any registered pesticide products containing propazine. The sole remaining registrant requested voluntary cancellation, and, on June 8, 2021, EPA issued a final cancellation order. 86 Fed. Reg. 30460 (June 8, 2021).

3

environment. 7 U.S.C. § 136a(g) (Registration Review); 7 U.S.C. § 136a(c)(5) (standard for registration); 40 C.F.R. 155.40(a) (describing the registration review program).

Prior to briefing on the merits, EPA moved for a partial remand without vacatur for the narrow purpose of reevaluating one aspect of the Atrazine IRRD. Petition for Review, Exhibit C, Dkt Entry 1-6 (hereafter "Atrazine IRRD").[2] That issue is the concentration of atrazine in water that triggers required monitoring or mitigation to protect aquatic ecosystems, which EPA had established at 15 micrograms/Liter (µg/L) in the Atrazine IRRD. Motion, Dkt Entry 26-1 (Aug. 30, 2021); Atrazine IRRD at 9 (EPA's response to comments from a "wide array of stakeholders" was that its decision to use a concentration of 15 µg/L had not changed).

Petitioners opposed the remand motion or, in the alternative, asked the Court to maintain jurisdiction and impose a deadline on any remand. Petitioners' Response, Dkt Entry 28 (Oct. 14, 2021).

---

[2] The Atrazine docket is posted on https://www.regulations.gov/, search docket number "EPA-HQ-OPP-2013-0266," click Dockets tab. The Atrazine IRRD is Exhibit C to the Petition and in the docket, EPA Dkt No. EPA-HQ-OPP-2013-0266-1605.

A motions panel granted EPA's motion, declined to impose a deadline, held the petition in abeyance pending EPA's completion of its reconsideration "or further order of the court," and ordered that EPA shall file status reports on its reconsideration proceedings every 90 days "until the reconsideration proceedings are completed." Remand Order (Dec. 14, 2021), Dkt Entry 31.

On November 7, 2024, the Clerk of Court filed an Order administratively closing the Petition. Order, Dkt Entry 45 (9th Cir. Nov. 7, 2024).

It has now been more than three years that EPA has been reconsidering one limited aspect of its Atrazine IRRD and well over four years since EPA issued it and the other orders under review. During this unreasonable timeframe, Petitioners have been deprived of their FIFRA right to judicial review of all aspects of EPA's orders, 7 U.S.C. § 136n(b), and grave harm to people and wildlife is ongoing.

2.  <u>An Order for a Deadline to Complete the Remand is Warranted</u>

Petitioners respectfully request that the Court order EPA to complete its reconsideration proceedings by June 30, 2025. While the Court did not order a deadline when it granted the remand in December

5

2021, a deadline is now warranted because EPA has dragged its feet on the remand for over three years.

A deadline is necessary because, present case in point, a remand without vacatur or a deadline "invites agency indifference." *In re Core Comm'ns, Inc.* 531 F.3d 849, 861-62 (D.C. Cir. 2008) (citation omitted). Both this Court and the D.C. Circuit often order deadlines to remedy unlawful agency action on remand, including regarding pesticide regulation. *E.g., Ctr. for Biological Diversity v. U.S. EPA*, 2022 U.S. App. LEXIS 19795, *2 (9th Cir. 2022) (ordering EPA to complete its endangered species effects determination for pesticide inpyrfluxam by June 22, 2023); *Ctr. For Food Safety v. Regan*, 56 F.4th 648, 669 (9th Cir. 2022) (ordering EPA to complete its endangered species effects determination for pesticide sulfoxaflor within 180 days of the mandate being issued); *Bunker Hill Co. v. EPA*, 572 F.2d 1286, 1305 (9th Cir. 1977) (ordering EPA to comply with an "expedited remand and review process" of six months due to serious delays to the implementation of the Clean Air Act); *see also In re Ctr. for Biological Diversity & Ctr. for Food Safety*, 53 F.4th 665 (D.C. Cir. 2022) (ordering EPA to complete endangered species effects determination by September 2023 after EPA

6

ignored the court's order remanding without vacatur or a deadline for five years).

### A. *EPA's slow pace is unreasonable*

EPA signed the Atrazine IRRD on September 14, 2020, and Petitioners still have not been afforded judicial review on the merits. Petition, Dkt Entry 1-6, Exhibit C (Oct. 30, 2020).

Four years ago, on February 9, 2021, EPA moved the Court to hold the case in abeyance for 60 days for new leadership to review the order for conformance with President Biden's *Executive Order on Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis* (Jan. 20, 2021). Motion, Dkt Entry 17. On April 26, 2021, the parties jointly moved the Court to hold the case in abeyance for an additional 48 days, while new leadership at EPA continued its review that "could resolve some or all of the issues in this case" and conserve judicial resources. Motion ¶¶ 13-14, Dkt Entry 18. Following more than six months of review, EPA decided to seek a partial voluntary remand for the sole purpose of reconsidering the atrazine concentration level to trigger mitigation for aquatic communities (15 µg/L) and, if the number changed, whether additional mitigation is necessary. Jt. Motion to

7

Govern Proceedings, Dkt Entry 24 (July 15, 2021); Motion for Remand, Dkt Entry 26 (Aug. 30, 2021). In sum, EPA's extended review did not come close to resolving any issues in this case. Instead, it brought this matter to a grinding halt.

In the three years since the Remand Order issued, EPA has documented its unreasonably slow pace in eleven status reports, which tend to be repetitive because there was so little action. *Compare* Status Reports, Dkt Entries 32-39, 42-44. EPA took six months following the Remand Order (about 17 months since it started its reconsideration) before providing notice on July 5, 2022, that its proposed revised decision was available for public comment. Status Report ¶ 4, Dkt Entry 34 (Aug. 31, 2022). The proposal reverts to the prior lower concentration to trigger mitigation (3.4 µg/L compared to 15 µg/L in the Atrazine IRRD) as supported by the best available science.[3]

Even though EPA had proposed a revised decision and asked for public comment, about five months after the public release, EPA

---

[3] Proposed Revisions to the Atrazine Interim Registration Review Decision at 2, EPA Dkt No. EPA-HQ-OPP-2013-0266-1625 (posted June 30, 2022).

informed the Court it had decided its aquatic plant risk assessment should undergo an additional round of peer review. Status Report ¶ 6, Dkt Entry 35 (Dec. 9, 2022). Eight months later, at the end of August 2023, the peer review panel met. Status Report ¶ 7, Dkt Entry 38 (August 30, 2023). In mid-November 2023, EPA posted the panel's report to the public docket but stated it would not respond to the report until the end of February 2024. Status Report ¶ 8, Dkt Entry 39 (Nov. 28, 2023).

In February 2024, EPA told the Court that it was "considering next steps and determining whether further administrative process is needed based on the findings in the Panel's report." Status Report, Dkt Entry 42 (Feb. 26, 2024). EPA then informed the Court that it had adopted the science panel's recommendation regarding three studies, and that it would take until July 2024, an additional four to five months, to provide public updates and next steps related to any proposed revisions to mitigation and/or monitoring for the aquatic ecosystem. Status Report ¶ 10, Dkt Entry 43 (May 24, 2024).

EPA posted updates to the public docket on July 8, 2024, including setting a higher concentration level of atrazine in water before

9

mitigation is triggered—9.7 µg/L, more than double the 3.4 µg/L proposed in 2022.[4] Status Report ¶ 10, Dkt Entry 44 (Aug. 22, 2024). EPA also stated it planned to provide a response to public comments on the 2022 proposed revisions in the Fall of 2024. *Id.* ¶ 11.

EPA has not filed any status reports since August 2024, as discussed further below. However, the Atrazine Registration Review docket shows that on December 5, 2024, EPA posted an "Updated Mitigation Proposal for the Atrazine Interim Registration Review Decision" with public comments due February 3, 2025.[5] In this document, EPA's section on "Next Steps and Timeline," only states that the document will be made available for public comment.[6] EPA does not provide any further steps or timeframe for completion of the process.

A good marker of EPA's unreasonable delay to complete the

---

[4] Update to "EFED Support Documentation for the Proposed Revisions to the Atrazine Interim Registration Review Decision Regarding Risks to Aquatic Plant Communities" at 6, EPA Dkt No. EPA-HQ-OPP-2013-0266-2128 (posted July 8, 2024).

[5] EPA Dkt No. EPA-HQ-OPP-2013-0266-2135 (posted Dec. 5, 2024).

[6] *Id.* at 18. EPA also finally responded to the public comments on the 2022 Proposed Revisions. *Id.* at 25 (Appendix C).

remand proceedings is that the Petition was filed in 2020 toward the end of the first Trump Administration, and the case languished during the entire Biden Administration. This is unlikely to change. On February 3, 2025, EPA extended the comment period on the Updated Mitigation Proposal for 60 days, from February 3 to April 4, 2025. 90 Fed. Reg. 8798, 8799 (Feb. 3, 2025).[7] A Court-ordered deadline to complete the remanded proceedings is warranted.

B. *Ongoing Use of Atrazine Pesticide Products is Causing Harm*

Meanwhile, the ongoing use of pesticide products that contain atrazine continue to cause harm to people and wildlife across much of the United States.[8] Atrazine is so harmful that it is banned in 60 countries.[9] Yet an average of about 72 million pounds is used annually

---

[7] The extension notice is also posted in the Atrazine Registration Review Docket, EPA Dkt No. EPA-HQ-OPP-0266-2134.

[8] The IRRD states that technical registrants committed to label modifications that would prohibit all uses of atrazine in Hawaii, Alaska, and five U.S. territories. Atrazine IRRD at 6.

[9] Pesticide Action Network International Consolidated List of Banned Pesticides, 7th Ed. (Dec. 2024), available at https://pan-international.org/pan-international-consolidated-list-of-banned-pesticides/ (see spreadsheet row 52 for atrazine).

in agriculture in the continental United States, mostly on field corn (62.3 million pounds). Atrazine IRRD at 11. Over half a million pounds is used on non-agricultural sites, including about 300,000 pounds on people's lawns. *Id.* at 11-12.

It is undisputed that exposure to atrazine leads to long-term hormonal disruption in humans and animals. According to EPA, exposure to atrazine suppresses the luteinizing hormone surge leading to neuroendocrine effects, in other words, disruptive hormonal effects (also known as endocrine disruption). Atrazine IRRD at 12. While atrazine may harm people of any age, "[e]xposures early in life may lead to effects later in life including delays in sexual maturation, inflammation of the prostate, effects related to development of the genitalia, and/or irregular menstrual cycles." *Id.* Atrazine is a known hormone-disrupting pesticide linked to birth defects, multiple cancers, and fertility problems like low sperm quality and irregular menstrual cycles. Declaration of Nathan Donley, Ph.D. ¶ 6, filed herewith.

As one might expect, atrazine causes grave harm to wildlife and plants. In 2016, EPA completed a "Refined Ecological Risk Assessment

for Atrazine.[10] EPA found that, based on extensive toxicity studies and surface water monitoring data, "a 60-day average of 3.4 µg/L has a high probability of impacting aquatic plant community primary productivity, structure, and function."[11] Atrazine also poses chronic risk to fish, amphibians, and aquatic invertebrates, exceeding EPA's level of concern for chronic risk by 62 times for fish.[12] Uses of atrazine also exceed EPA's levels of concern for chronic risk by 198 times for mammals and 22 times for birds.[13] Atrazine also adversely impacts terrestrial plants. Terrestrial plant biodiversity and communities "are likely to be impacted from off-field exposures via runoff and spray drift," even at application rates that are much lower than allowed on the product labels,[14] which will indirectly adversely affect insects and other

---

[10] EPA Dkt No. EPA-HQ-OPP-2013-0266-0315 (posted April 29, 2016).

[11] *Id.* at 2 (Abstract).

[12] *Id.*

[13] *Id.*

[14] *Id.* Maximum single application rates on the product labels vary by crop from 1 pound active ingredient/Acre (a.i./A) (Turf-Bermudagrass) to 4 pounds a.i./A (sugarcane), and annual applications rates go as high as 10 pounds a.i./A for sugarcane. *Id.* at 37 (Table 1). EPA found

13

wildlife that rely on those plant communities. In sum, uses of atrazine may harm every kind of plant and wildlife.

In March 2020 comments submitted on the Proposed Atrazine IRRD, Petitioner Center for Biological Diversity ("CBD") summarized some of the harms to wildlife from atrazine, including effects on growth, sexual development, metamorphosis, gene regulation, immune function, and behavior.[15] CBD provided to EPA a list of findings in 185 studies published since 2016[16] (as well as the studies themselves[17]) that show direct and serious harm from atrazine, even at low doses—especially to plants, fish, aquatic invertebrates, and amphibians.

---

adverse impacts to terrestrial plants at rates of 0.5 and 0.25 lbs. a.i./A. *Id.* at 2; *see* Current label for AAtrex 4L Herbicide at 29, EPA Reg. No. 100-497 (sugarcane maximum single application rate of 4 pounds a.i./A and maximum annual application rate of 10 a.i./A), available at: https://www3.epa.gov/pesticides/chem_search/ppls/000100-00497-20240708.pdf.

[15] CBD Comments at 3-4, EPA Dkt No. EPA-HQ-OPP-2013-0266-1568 (posted Mar. 26, 2020) (first document, "Comment").

[16] "Atrazine survey post 2016" spreadsheet, EPA Dkt No. EPA-HQ-OPP-2013-0266-1568 (posted Mar. 26, 2020) (sixth document below the main Comment document).

[17] EPA Dkt Nos. EPA-HQ-OPP-2013-0266-1568, -1569, -1570, 1580, -1581, -1582, -1582, -1583, -1584, -1585, -1586, -1587, -1589, -1590, and -1592.

Many watersheds in the continental U.S. are contaminated with atrazine at levels that surpass the concentration equivalent level of concern (CE-LOC), a threshold meant to "provide protection for the entire aquatic ecosystem, including fish, invertebrates, and amphibians".[18] In other words, EPA recognizes that atrazine contamination in waterways exceeds its own thresholds to protect aquatic environments. This is wholly unsurprising, given the vast acreage treated, about 63 million acres of field corn alone,[19] and the fact that atrazine is mobile, running off fields into waterways, and persistent in the environment.[20]

Recently, Petitioner CBD completed an analysis of EPA's December 2024 Updated Mitigation Proposal for the Atrazine Interim

---

[18] Updated Mitigation Proposal at 4 and 7, EPA Dkt No. EPA-HQ-OPP-2013-0266-2135.

[19] Assessment of the Benefits of Atrazine and the Impacts of Potential Mitigation for Field Corn, Sweet Corn, Sorghum, and Sugarcane at 9 (Table 1), EPA Dkt No. EPA-HQ-OPP-2013-0266-1624 (posted June 30, 2022).

[20] Refined Ecological Risk Assessment for Atrazine at 23, EPA Dkt No. EPA-HQ-OPP-2013-0266-0315.

Registration Review Decision.[21] CBD estimated the degree to which EPA's new mitigation proposal, designed to reduce atrazine contamination in water, would reduce atrazine pollution below the level that EPA recognizes is harmful to wildlife.[22] The finding—only 1% of the 11,249 contaminated watersheds would see improvements to a level that EPA considers protective of plants on wildlife dependent on them.[23]

Most egregious, atrazine harms our most vulnerable species, species that are endangered and threatened, and supposed to be protected by the Endangered Species Act ("ESA"). In November 2021, EPA concluded in its final Biological Evaluation, an assessment required by the ESA, that registered uses of atrazine are likely to adversely affect 1,013 of the total species protected by the Endangered Species Act (56% of protected species) and likely to adversely affect 328

---

[21] EPA Dkt No. EPA-HQ-OPP-2013-0266-2135 (posted Dec. 5, 2024).

[22] Center for Biological Analysis: EPA Plan Would Greenlight Atrazine Runoff Pollution at Levels Known to Cause Harm in 99% of the Nation's 11,249 Contaminated Watersheds (Jan. 30, 2025), attached as Exhibit A to the Donley Declaration.

[23] *Id.* at 1.

of the total ESA-designated critical habitats (41% of critical habitats).[24] EPA determined that fish, aquatic invertebrates, and amphibians are the most likely to be adversely affected by atrazine—89.5% of fish, 87.0% of aquatic invertebrates, and 86.1% of amphibians.[25] EPA's Biological Evaluation was based on registrant "commitments" to implement certain mitigation measures.[26] Even accounting for those improved mitigation measures EPA still concluded that the majority of all ESA-protected species and greater than 80% of fish, amphibians, and aquatic invertebrates are likely to be adversely affected by atrazine.[27] This ongoing harm, while EPA continues its delay, is unacceptable. Petitioners entreat the Court to order a deadline.

---

[24] Atrazine Executive Summary for Biological Evaluation at 5. Available at https://www.epa.gov/endangered-species/final-national-level-listed-species-biological-evaluation-atrazine#executive-summary.

[25] *Id.*

[26] *Id.* at 2.

[27] Note that neither the U.S. Fish and Wildlife Service nor the National Marine Fisheries Service have completed consultation by issuing a biological opinion for the species under their respective jurisdictions. Therefore, it is unknown whether atrazine may be placing ESA-protected species in jeopardy of extinction or adversely modifying critical habitats for those species. 16 U.S.C. § 1536(a)(2), (b)(3).

4. <u>The Court Should Continue to Require Status Reports</u>

EPA filed its last Status Report on August 22, 2024, well over 90 days ago. Status Report, Dkt Entry 44 (9th Cir. Aug. 22, 2024). Before the next status report was due, on November 7, 2024, the Clerk of Court filed an Order administratively closing the Petition. Order, Dkt Entry 45 (9th Cir. Nov. 7, 2024).

Counsel for Petitioners communicated with Counsel for EPA asking why EPA has not continued to file status reports prior to filing this motion. EPA's position is that it is implicit in the administrative closure Order that EPA is no longer required to file status reports. Declaration of Stephanie M. Parent, filed herewith.

Petitioners respectfully request that the Court continue to require status reports as long as the Remand Order is in effect, whether or not it imposes a deadline, or an administrative closure remains in place. An administrative closure order is a docket managing device that "has no legal consequences" other than to remove the case from the court's active docket. *Dees v. Billy,* 394 F.3d 1290, 1294 (9th Cir. 2005) *citing Penn West Assocs., Inc. v. Cohen*, 371 F.3d 118, 128 (3d Cir. 2004), *Lehman v. Revolution Portfolio LLD*, 166 F.3d 389, 392 (1st Cir. 1999),

18

and *Fla. Ass'n for Retarded Citizens, Inc. v. Bush*, 246 F.3d 1296, 1298 (11th Cir. 2001).

Most cases discussing administrative closure concern whether a district court order compelling arbitration can be appealed following administrative closure. However, the reasoning that an administrative closure should have no effect on the case, other than to remove the case from the calendar, applies equally to this matter. At least one district court has concluded that administrative closure does not affect prior orders in the case. *H.R. Bushman Son, Corp. v. Spud Packers, Inc.*, 2008 U.S. Dist. LEXIS 119540, *4-7 (E.D. Mo. 2008) (preliminary injunction remains in effect). Moreover, district courts frequently require status reports after administrative closure. *See, e.g., Moqeet v. Charlotte's Web Holdings*, 2021 U.S. Dist. LEXIS 201239, *3-4 (C.D. Cal. 2021); *Seaman v. Private Placement Capital Notes II. LLC*, 2017 U.S. Dist. LEXIS 47121, *18-19 (S.D. Cal. 2017).

## CONCLUSION

Based on the unreasonable passage of time, more than three years since the Remand Order and more than four years since Petitioners filed the Petition, the ongoing harm, Petitioners' deprivation of their

right to judicial review, and EPA's refusal to even file status reports, Petitioners submit that reopening this matter is warranted and ask that the Court impose a deadline on EPA to complete the remanded proceedings and issue a revised Atrazine Interim Registration Review Decision by June 30, 2025, and continue to require status reports every 90 days until EPA does so.

Respectfully submitted this 19th day of February 2025.

/s/ Stephanie M. Parent
Stephanie M. Parent
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
T: (971) 717-6404
sparent@biologicaldiversity.org

/s/ George A. Kimbrell
George A. Kimbrell
Center for Food Safety
2009 NE Alberta Street, Suite 207
Portland, OR 97211
T: (971) 271-7372
gkimbrell@centerforfoodsafety.org

Sylvia Shih-Yau Wu
Center for Food Safety
303 Sacramento Street, 2nd Floor
San Francisco, CA 94111
T: (415) 826-2770
Email: swu@centerforfoodsafety.org

*Attorneys for Petitioners*