UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| RURAL COALITION, et al., | ) | |
| | ) | |
| *Petitioners,* | ) | |
| | ) | |
| v. | ) | Case No. 20-73220 |
| | ) | |
| U.S. ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, et al., | ) | |
| | ) | |
| *Respondents.* | ) | |
| | ) | |
| ——————————————— | ) | |
| | ) | |
| SYNGENTA CROP PROTECTION, | ) | |
| LLC, | ) | |
| | ) | |
| *Intervenor.* | ) | |

**EPA'S PARTIAL OPPOSITION TO PETITIONERS' MOTION TO
REOPEN PETITION, ORDER A DEADLINE TO COMPLETE
REMAND PROCEEDINGS, AND TO ENFORCE ORDER
REQUIRING STATUS REPORTS**

Respondents Environmental Protection Agency and Administrator

Lee Zeldin[1] (collectively, "EPA" or "the Agency") file this partial

opposition to Petitioners' motion to reopen the petition, order a deadline

for EPA to complete its remand proceedings, and order EPA to file

_____

[1] Administrator Zeldin is substituted for former Administrator Michael
Regan pursuant to Federal Rule of Appellate Procedure 43(c)(2).

status reports.  Reopening the petition and ordering EPA to conclude its reconsideration proceedings in four months is not warranted or reasonable under the circumstances.

This petition concerns EPA's Interim Registration Review Decisions for two pesticides: atrazine and simazine.  Before merits briefing commenced,[2] EPA sought a partial voluntary remand to reconsider a portion of the assessment of ecological risks identified in the Interim Registration Review Decision for atrazine ("Interim Decision").  Dkt. No. 26-1.  Since December 2021, EPA has been diligently reconsidering the issue on remand, including by proposing revisions to the underlying scientific determinations, convening a Scientific Advisory Panel, and releasing an updated mitigation proposal for public comment.  On a parallel track, EPA has been in consultation with federal agencies under the Endangered Species Act ("ESA").

For the sake of judicial and administrative efficiency, the Court should keep this matter administratively closed and in abeyance until September 30, 2026.  With the change in administration on January 20,

---

[2] EPA filed a 1,200-page administrative record index, Dkt. No. 14, but has yet to lodge the record.  EPA anticipates the record will be lengthy.

2

2025, EPA will need to account for any new policy directions that could impact scheduling. The most efficient course is for the Court to permit EPA to conclude remand proceedings in a manner that provides flexibility and accounts for completing ESA consultation. EPA does not oppose Petitioners' request for status reports every 90 days.

I.     BACKGROUND

A.     EPA's Partial Remand Request

On July 15, 2021, EPA sought remand to reevaluate the scientific determination that the concentration of 15 micrograms per liter triggers required monitoring and/or mitigation to protect the aquatic ecosystem. Dkt. No. 26-1 at 7. Petitioners opposed or, in the alternative, requested that the Court set a 60-day deadline for EPA to complete its remand. Dkt. No. 28 at 7.

On December 14, 2021, the Court granted EPA's request for a partial voluntary remand and ordered EPA to file status reports every 90 days "until the reconsideration proceedings are complete[.]" Dkt. No. 31 at 2. The Court did not order a date by which EPA must complete remand. Since then, EPA has filed eleven status reports updating the

Court on the steps the Agency has taken and anticipated timeframes for other actions (described in more detail below). Dkt. Nos. 32–39, 42–44.

On November 7, 2024, the Clerk of Court administratively closed the petition and directed the parties to tell the Court within 14 days after EPA completed its administrative proceedings. Dkt. No. 45. EPA interpreted this order to mean that status reports were no longer required, and therefore discontinued filing them.

B.    EPA's Remand Proceedings

EPA has been diligently reevaluating the concentration of atrazine that triggers required monitoring and/or mitigation to protect the aquatic system from adverse effects. This is a complicated issue that has required extensive analysis and expertise. *See* Declaration of Edward Messina ("Messina Decl.") ¶¶ 12–27. EPA's efforts are summarized below.

In July 2022, EPA issued for public comment proposed revisions to the Interim Decision. *See* 87 Fed. Reg. 39822 (July 5, 2022). EPA received over 68,000 comments during the three-month public comment period. Messina Decl. ¶ 16. Based in part on the comments, EPA determined that aspects of the Agency's aquatic plant risk assessment

4

supporting the revisions to the Interim Decision should undergo an additional round of peer review by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") Scientific Advisory Panel ("Panel"). *Id.* ¶ 17. In preparation for the Panel, EPA issued a white paper identifying seven "charge questions" for the Panel. *See* White Paper at 16.

The Panel met in August 2023 to discuss and answer the charge questions. *See* Meeting Agenda; Messina Decl. ¶ 18. Specifically, the Panel considered the Agency's reevaluation of eleven atrazine microcosm and mesocosm studies identified by the Panel in 2012 as warranting further review, whether the studies should be included in the Agency's analysis and, if appropriate, whether they show an effect on the aquatic plant community. 88 Fed. Reg. 17843–45 (March 24, 2023).

On November 16, 2023, EPA posted to the public docket the meeting minutes and the Panel's final report. *See* Transmittal of the Meeting Minutes and Final Report. The report included recommendations related to the issue on remand (i.e., what concentration triggers required monitoring and/or mitigation to protect

the aquatic ecosystem). *Id.* On February 29, 2024, EPA responded to the Panel's report, explaining that some of the Panel's recommendations aligned with EPA's conclusions, while others did not. *See* EPA's Response. The Panel recommended that EPA exclude three study groups from the cosm database. *Id.* at 2–3. After reviewing the Panel's report, EPA agreed with the Panel and adopted its recommendation. *Id.* at 3.

On July 8, 2024, EPA posted to the public docket an update that includes the new concentration level that would trigger mitigation and updated maps showing where mitigation may be required, and provides next steps related to any proposed revisions to mitigation and/or monitoring for the aquatic ecosystem. *See* Update to "EFED Support Documentation for the Proposed Revisions to the Atrazine Interim Registration Review Decision Regarding Risks to Aquatic Plant Communities" and High Resolution Map of HUC 12 Watersheds.

On December 5, 2024, EPA released for public comment an updated mitigation proposal that synthesizes the robust information that EPA has compiled, studied, and considered over the last three years. *See* 89 Fed. Reg. 96650 (Dec. 5, 2024). The proposal reflects a

6

revised concentration level of concern for aquatic ecosystems of 9.7 micrograms per liter. *Id.* The public comment period ends on April 4, 2025. 89 Fed. Reg. 8798, 8799 (Feb. 3, 2025).

C.   ESA Consultation

Alongside its work on the remanded issue in the Interim Decision, EPA has been in ongoing consultations with the National Marine Fisheries Service ("NMFS") and the Fish and Wildlife Service ("FWS") (collectively, "the Services") under the ESA.

Section 7(a)(2) of the ESA directs each federal agency to ensure, in consultation with the appropriate consulting agency, that any action "authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of" a listed species or destroy or adversely modify designated critical habitat. 16 U.S.C. § 1536(a)(2). "Formal consultation" is required if the action agency (here, EPA) determines that the proposed action "may affect" and is "likely to adversely affect" a threatened or endangered species or its critical habitat. 50 C.F.R. § 402.14(a), (b). In this instance, the Services must prepare biological opinions "detailing how the agency action affects the species or its critical habitat[,]" 16 U.S.C. § 1536(b)(3)(A), and stating

whether the action is likely to "jeopardize the continued existence of" a listed species or destroy or adversely modify its critical habitat, *id*. § 1536(a)(2); 50 C.F.R. § 402.14.

In November 2021, EPA submitted biological evaluations to the Services and requested formal consultation on atrazine. Messina Decl. ¶ 28. According to FWS, this is a "colossal" undertaking and represents one of "the most challenging and complex consultations ever conducted by the Service." *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Svc.*, Case No. 4:22-cv-00090-JCH, Dkt. No. 38 at 17. Consistent with ESA Section 7(b)(1) and the ESA Section 7 implementing regulations at 50 C.F.R. § 402.14(e)-(f), FWS and EPA agreed to extend the timeframe for consultation on atrazine, with the required consent of the technical registrants that have been identified as "applicants" to these consultations. Messina Decl. ¶ 29. In an ESA Section 7(b) letter sent from FWS to EPA on February 10, 2022, FWS previously estimated that would be able to issue a final biological opinions for atrazine by March 31, 2026. *Id.* ESA Section 7(b) allows the Services and action agencies, with the consent of applicants to the consultation, to extend the timeframe for completing ESA Section 7(a)(2) consultation, as needed

throughout the process, to allow for additional data that would provide a better information base from which to formulate their final biological opinions. *Id.*

## II. ARGUMENT

### A. A Court-Ordered Deadline is Not Warranted Under the Circumstances

As outlined above, EPA has committed significant time and resources to carefully reconsidering the concentration level of concern for atrazine in the aquatic ecosystem. This concentration is important because it ensures that the environment is being protected and could trigger potentially expensive and burdensome monitoring or mitigation measures on pesticide users and growers. *Id.* ¶ 14. In addition, as the Court is aware, a new administration took office on January 20, 2025, and EPA's ongoing review of this action must be coordinated with incoming officials. *Id.* ¶ 24.

Absent "substantial justification," courts may not dictate remand's "time dimension." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Defense Council, Inc.*, 435 U.S. 519, 544-45 (1978); *cf. W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 813 (9th Cir. 1980) ("Our intervention into the process of environmental regulation, a process of great complexity,

9

should be accomplished with as little intrusiveness as feasible."); *see, e.g.*, *Nat'l Fam. Farm Coal. v. EPA (NFFC I)*, 960 F.3d 1120 (9th Cir. 2020) (no deadline on remand); *Nat'l Fam. Farm Coal. v. EPA (NFFC II)*, 966 F.3d 893, 929-30 (9th Cir. 2020) (no deadline, even though original Enlist Duo registration occurred in 2014).

Now, for the first time in three years, Petitioners are raising the issue of timeliness with EPA and the Court.[3] Petitioners' claim that EPA has "dragged its feet," Mot. at 6, is controverted by the robust remand proceedings to date, which have resulted in a new proposed concentration equivalent level of concern and an updated mitigation

---

[3] Petitioners rely primarily on cases that concern remand without vacatur after a ruling on the merits, where the timing of remand is a fact-specific inquiry. *See* Mot. at 6–7; *see, e.g.*, *Ctr. for Food Safety v. Regan*, 56 F.4th 648, 652, 659–63, 68–69 (remanding EPA's pesticide registration for sulfoxaflor and ordering EPA to complete specific agency actions within 180 days); *In re Ctr. for Biological Diversity*, 53 F.4th 665, 669, 671–73 (D.C. Cir. 2022) (granting petitioners' writ of mandamus to compel EPA to comply with the court's previous order within ten months); *Bunker Hill Co. v. EPA*, 572 F.2d 1286, 1304–05 (9th Cir. 1977) (reversing part of EPA's Clean Air Act decision and remanding to agency for six months to reconsider a narrow issue). Petitioners cite only one unreported decision setting a deadline for EPA's actions on voluntary remand. Mot. at 6 (citing *Ctr. For Biological Diversity v. U.S. EPA*, No. 20-73146, 2022 WL 2805090 (9th Cir. 2022). The court adopted EPA's proposed deadline in that case. 2022 WL 2805090, at *1.

proposal, Messina Decl. ¶ 21. Petitioners' request lacks the "substantial justification" needed to place a time limit on the Agency's remand, especially considering registrants have already implemented the Interim Decision's mitigation measures that are "expected to reduce overall ecological exposure and potential risk to non-target species." Dkt. Entry 1-6, Doc. No. 11877074 at 132.

EPA is in the middle of the public comment period on the updated mitigation proposal. In fact, Petitioner Center for Biological Diversity ("the Center") requested an extension of the comment period to review "the extensive amount of data that is relevant to this decision." Brown Decl., ¶ 3, Ex. A. The Center acknowledged the significant efforts that EPA has undertaken on remand: "[t]he agency's reanalysis of the [concentration equivalent level of concern] and associated materials, the 2023 SAP meeting minutes and associated materials, and the hundreds of pages of material relevant to the mitigation menu that is being proposed necessitate more time for stakeholders to provide meaningful comment." *Id.* EPA granted the Center's request, and provided interested parties until April 4, 2025, to review the updated mitigation proposal. Messina Decl. ¶ 22.

EPA anticipates substantial public comment on the updated mitigation proposal due, in part, to the fact that the 2022 revisions received thousands of comments. *Id.* ¶ 23. After the close of the comment period, EPA will compile and categorize the comments received, assign them to the appropriate staff, and then begin to draft responses. *Id.* ¶¶ 25–27. During the review of the comments, staff and management will meet to discuss issues that need to be resolved based on the information in the comments and whether adjustments to the proposed mitigation are required. *Id.* ¶ 25. Based on the previous review of comments received on the original comment period and the expectation that EPA will receive a significant number of comments, the Agency will need approximately six to nine months to review comments, draft responses, provide management review, and conduct any necessary revisions. *Id.* ¶ 27. Thus, EPA anticipates it will take until about December 2025 to complete the response to comments. *Id.*

EPA's remand also dovetails with ESA consultation. The Services' final biological opinions could affect the proposed mitigation and/or monitoring included in the Interim Decision. *Id.* ¶¶ 31–32. As mentioned, FWS previously estimated in an ESA Section 7(b) letter that

it would be able to issue a final biological opinion for atrazine by March 31, 2026.[4]  *Id.* ¶ 29.  Therefore, EPA will likely be discussing mitigation related to the ESA consultation in late 2025 and early 2026.  *See id.* ¶¶ 29–31.  EPA expects to take final action on the updated mitigation proposal within six months of the final biological opinions being issued, or no later than September 30, 2026.  *Id.* ¶ 33.

In sum, ordering a deadline for EPA to complete remand is not warranted under the circumstances because EPA has made significant progress and has a plan for reaching a final decision on the partial remand in a manner that is consistent with its obligations under the ESA.

> **B.** If the Court Reopens the Petition and Orders a Completion Date, the Appropriate Date is After EPA has Implemented the Services' Biological Opinions

Should the Court reopen this matter, Petitioners' requested deadline of June 30, 2025, is far too short.  As shown in EPA's supporting declaration, responding to comments and finalizing a decision will take at least 6 months after the Services issue the final

---

[4] The timeframe for completing consultation is neither at issue in this case, nor subject to this Court's jurisdiction.

13

biological opinions. *Id.* ¶¶ 27, 31. EPA's proposed timeline accounts for the extra time needed to coordinate with new administration officials about the remand and account for any policy changes. *Id.* ¶¶ 24–25. The Agency needs time to orient the new leadership to the organization, program activities, priorities, policies, and pending deliverables. *Id.* ¶ 24. This process may result in policy changes and will require additional time to finalize Agency actions. *Id.*

Given these considerations, the most efficient course is to permit EPA to finalize remand proceedings on the Interim Decision after the Services have completed any biological opinions from the ongoing ESA consultation. Accordingly, EPA anticipates completing its remand proceedings at the earliest by September 30, 2026. *Id.* ¶ 33.

C.    EPA Will File Status Reports Every 90 Days

EPA disagrees with Petitioners' interpretation that status reports are required for a matter that is administratively closed, but is willing to resume filing status reports to keep the Court and parties apprised of EPA's continued progress.[5]

_____

[5] The court issued the same order administratively closing the case on the same day in a similar matter regarding EPA's interim registration review decision for the pesticide paraquat. *CRLAF et al. v. U.S. EPA, et*

14

## D. CONCLUSION

For the reasons stated above, EPA respectfully requests that this case remain administratively closed.  If the Court elects to reopen the matter and set a deadline, EPA requests that the deadline be set for September 30, 2026, to allow EPA to finalize the actions on remand and to provide time for the parties to confer on next steps.

Dated:  March 3, 2025

Respectfully submitted,

LISA LYNNE RUSSELL
*Deputy Assistant Attorney General*
U.S. Department of Justice
Environment & Natural
Resources  Division

*/s/   Lucy E. Brown*
LUCY E. BROWN
*Attorney*
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
lucy.e.brown@usdoj.gov
Tel: (202) 598-1868

*Attorneys for Respondents*
*U.S. Environmental Protection*
*Agency and Administrator*
*Lee Zeldin*

---

*al.*, Case No 21-71287 (9th Circ.), Dkt. No. 62.  DOJ counsel in that case confirmed with the clerk of court that status reports were no longer required for administratively closed cases.  Brown Decl. ¶ 4, Ex. B.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

I hereby certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in Microsoft Word using 14-point Century Schoolbook, a proportionally spaced font.

/s/   *Lucy E. Brown*
Lucy E. Brown
Attorney for Respondents U.S. EPA
and Administrator Lee Zeldin

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document using the Electronic Case Filing ("ECF") system of this Court.  The ECF system will send a "Notice of Electronic Filing" to the attorneys of record.

/s/ *Lucy E. Brown*
Lucy E. Brown
Attorney for Respondents U.S. EPA
and Administrator Lee Zeldin