UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| RURAL COALITION, et al., | ) | |
| | ) | Case No. 20-73220 |
| *Petitioners*, | ) | |
| | ) | EPA No. EPA-HQ-OPP-2013-0250 |
| v. | ) | |
| | ) | PETITIONERS' REPLY IN |
| U.S. ENVIRONMENTAL | ) | SUPPORT OF MOTION TO |
| PROTECTION AGENCY, | ) | REOPEN PETITION, ORDER A |
| et al., | ) | DEADLINE TO COMPLETE |
| | ) | REMANDED PROCEEDINGS, AND |
| *Respondents*, | ) | TO ENFORCE ORDER REQUIRING |
| | ) | STATUS REPORTS |
| SYNGENTA CROP | ) | |
| PROTECTION, LLC, | ) | |
| | ) | |
| *Intervenor*. | ) | |
| _____ | ) | |

EPA argues that this Petition should remain administratively closed until September 30, 2026, *more than six years* after EPA issued its Atrazine Interim Registration Review Decision. Nor is there any guarantee that this case might resume even at that late date, because EPA argues that the Court should not order a deadline to complete its remand proceedings. But a deadline is especially necessary in this situation. By EPA's logic, it can unilaterally insert years of delay to judicial review of its orders once it obtains a voluntary remand. EPA misconstrues this Court's authority to order a deadline to complete

remand proceedings based on EPA's unreasonable delay and ongoing harm.

1.    This Court has Ample Authority to Order a Deadline

EPA misunderstands the case law concerning this Court's authority to order a deadline for EPA to complete its voluntary remand proceedings. First, there is no distinction between the Court's authority to order a deadline to complete a remand after ruling against an agency on the merits and the authority to order a deadline to complete "voluntary" remand proceedings that are delaying judicial review of the merits. EPA Opp. at 10, n.3. Each of the cases that Petitioners cited show that the Court has the authority to place time constraints on remand proceedings. Motion at 6-7, Dkt Entry 49 (Mar. 3, 2025). It is telling that each of the parties had trouble finding cases one way or the other concerning agency delay in completing remand proceedings that are holding up judicial review because this is an unusual situation that must be rectified with a court deadline for EPA to complete those proceedings.

EPA misrepresents *Nat'l Family Farm Coal. v. EPA (NFFC I)* by characterizing the case as an example of a court order with "no deadline

on remand" in its parenthetical description. EPA Opp. at 10. This Court did not impose a deadline because it *vacated EPA's decision* after ruling against EPA on the merits; it did not remand the decision to the agency at all. 960 F.3d 1120, 1145 (9th Cir. 2020) ("Petition for review **GRANTED**. Registrations **VACATED**."). Vacating EPA's dicamba registration decisions rendered them inoperative, providing the petitioners their full remedy; therefore, no remand or deadline on remand was necessary. The only mention of "remand" is in the Court's discussion of whether it should remand to the agency without vacatur, as urged by EPA, which it declined to do. *Id.* at 1144-45. Thus, this case does not stand for the proposition that the Court does not have authority to order a deadline to complete remand proceedings.

It is true that this Court did not impose a calendar date for EPA to consider harm to monarch butterflies from use of the pesticide Enlist Duo, but it did "'expect and urge EPA to move *promptly* on remand.'" *Nat'l Family Farm Coal. v. EPA (NFFC II)*, 893 F.3d 893, 930 (9th Cir. 2020) (emphasis added) (*citing EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118, 132 (D.C. Cir. 2015) and *In re Core Commc'ns, Inc.*, 531 F.3d 849, 862 (D.C. Cir. 2008)). In *EME Homer*, the D.C. Circuit

recognized that remand without vacatur "creates a risk that an agency may drag its feet," therefore, the court explained that if EPA did not move promptly on remand, petitioners could bring suit for failure to perform and other appropriate remedies. *EME Homer*, 795 F.3d at 132. In *In re Core Communications*, after an agency let six years pass after a remand without vacatur or deadline, the Court granted a writ of mandamus ordering the agency to act by a date certain and vacating the rules on that date if the agency failed to act. 531 F.3d at 861-862; *id.* at 862-63 (Giffith, J., concurring) (setting forth cases questioning the wisdom of remand without vacatur). *See also In re Ctr. for Biological Diversity and Ctr. for Food Safety*, 53 F.4th 665 (D.C. Cir. 2022) (petitioners forced to obtain writ of mandamus after five years of remanded proceedings without vacatur or a deadline). In *NFFC II*, this Court's direction to EPA to move promptly warned EPA of legal repercussions if it did not. EPA's approach here is the antithesis of "prompt."

Yes, courts must be careful not to intrude in agency processes, but setting a deadline here, after years of delay, is not such an intrusion. *Vermont Yankee* concerned the lower court overstepping and departing

from the basic administrative law tenet that agencies are free to fashion

their own rules of procedure; it did not concern imposition of a deadline.

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Defense Council, Inc.,* 435

U.S. 519, 544 (1978). The quotes within *Vermont Yankee* come from a

case where the lower court determined it did not have an adequate

record for review, ordered the agency to conduct a specific investigation,

and provide a report to the court within 30 days. *Federal Power*

*Comm'n v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 329-330

(1976). Again, the facts here show that EPA has had control of the steps

it is taking on remand, but the years of delay are the "substantial

justification" needed for this Court to order a remand deadline. *Id.* at

332-33.

  In *Western Oil & Gas Association v. EPA*, this Court reluctantly

decided not to set aside EPA's rule designating areas in California as

failing to meet federal air quality standards because it wanted to "avoid

thwarting the operation of the Clean Air Act" and "the possibility of

undesirable consequences" that could not be predicted. 633 F.2d 803,

813 (9th Cir. 1980). It was with this concern in mind that the Court

cautioned that its intervention into environmental regulation should be

5

as unintrusive as feasible. *Id.* The Court went on to describe its

authority to shape an equitable remedy and ordered EPA to provide

petitioners with an opportunity to comment on the designation, consider

the comments, and substitute any revisions for the existing

designations to account for petitioners' injury "while minimizing any

frustration of the purposes of the Clean Air Act Amendments of 1977."

*Id.* Accordingly this case plainly *supports* Petitioners' request for a

deadline here, because just as in that case EPA here is frustrating the

substantive duties and judicial review provisions in the Federal

Insecticide, Fungicide, and Rodenticide Act by its unreasonable delay in

completing the remand proceedings.

2.   <u>EPA's Delay is Unreasonable</u>

EPA and Syngenta take aim at Petitioners for waiting to raise the

issue of timeliness to the Court. EPA Opp. at 10; Syngenta Opp. at 2.

Yet Petitioners asked the Court to order a deadline on the remand

proceedings in October 2021, but it did not. Petitioners' Response, Dkt

Entry 28 (Oct. 14, 2021); Remand Order, Dkt Entry 31 (Dec. 14, 2021).

For Petitioners to support another request for a deadline, sufficient

time must have passed to show that the delayed completion of the

6

remand proceedings is unreasonable. That time is now.[1]

EPA intends to insert even further delay into issuing a revised Atrazine Interim Decision by pointing to the Endangered Species Act ("ESA") consultations. EPA Opp. at 12-13. To cast back, EPA asked for a voluntary remand "of a portion of the assessment of ecological risks identified in the Interim Decision . . . [s]pecifically, EPA seeks remand to reevaluate the determination in the Interim Decision that the concentration of 15 micrograms per liter ("µg/L") triggers required monitoring and/or mitigation to protect the aquatic ecosystem." EPA Motion for Partial Remand Without Vacatur, Dkt Entry 26-1 at 2 (Aug. 30, 2021). Indeed, EPA never intended to fully comply with its ESA duties until its final registration review decision, not in its interim

---

[1] Respondents also latch onto the fact that the Center for Biological Diversity asked for an extension of the current comment period. EPA Opp. at 11; Syngenta Opp. at 2. On December 6, 2024, the Center requested a 30-day extension, from February 3 to March 5, 2025. EPA did not grant that request. On the February 3 deadline, EPA published in the Federal Register that it was extending the comment period for 60 days, twice what the Center requested. Declaration of Lucy E. Brown, Exhibit A; 90 Fed. Reg. 8798 (Feb. 3, 2025). Regardless, the marginal increase of time of one month over EPA's six years of unreasonable delay is irrelevant and a red herring.

decision. Atrazine Interim Decision, Dkt Entry 1-6 at 79 of 134 (Oct. 30, 2020) (the interim decision would "improve" ESA consultation process, but EPA did not intend to complete its ESA duties until prior to its final registration decision). EPA must comply with its ESA duties as soon as possible, but if FWS continues to delay completion of consultation, that should not hold up EPA issuing a revised Atrazine Interim Decision.

Pulling in the ESA before completing a revised Atrazine Decision is gravely concerning because federal agency compliance with ESA duties on the impacts of pesticides has been fraught with delay. EPA completed its Biological Evaluation on the potential effects of atrazine on endangered and threatened species to initiate the ESA consultations pursuant to a court-ordered settlement agreement in the first instance. Atrazine Interim Decision at 81 of 134 (setting forth the settlement).[2] EPA initiated consultation in November 2021, then has agreed to "extensions" of the time for the consulting agencies to complete their biological opinions. EPA Opp. at 8-9. The U.S. Fish and Wildlife

---

[2] Order Entering Stipulated Partial Settlement Agreement at Sec. 2.a., *Ctr. for Biological Diversity v. U.S. EPA*, Case No. 3:11-CV-293-JCS (N.D. Cal. Oct. 22, 2019), ECF 366, 364.

Service's ("FWS") failure to timely complete pesticide consultations, including atrazine, more than three years now, is the subject of an unreasonable delay case. In that case, FWS "estimates" completing consultation for atrazine by March 31, 2026, but it has strenuously argued that the court should not order it to do so by that deadline.[3] Thus, currently, there is no guarantee that EPA will be able to take final action on updated ESA mitigation no later than September 30, 2026.

3. <u>Harm is Ongoing</u>

EPA makes a passing reference to the fact that registrants have implemented the Interim Decision's mitigation measures expected to <u>reduce</u> risks to non-target species to claim that Petitioners lack a "substantial justification" for a deadline. EPA Opp. at 11. Registrants committed to make changes to their atrazine product labels to "streamline and improve the biological evaluation and any subsequent

---

[3] Defs' Cross-motion for Summary Judgment at 11 (citing Schulz Decl. ¶ 47) and at 14-27 (arguing its years of delay is not unreasonable and that injunctive relief is not appropriate), *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, Case No. 4:22-cv-00090-JCH, ECF 34 (D. Az. Aug. 8, 2024). A decision on cross-motions for summary judgment is pending.

consultations . . . ." Atrazine Interim Decision at 6. EPA and Syngenta do not respond to the fact that, even with the interim mitigations, *greater than 80%* of ESA-protected fish, amphibians, and aquatic invertebrates are likely to be adversely affected by atrazine. Motion at 17. This ongoing harm continues.

EPA has unreasonably delayed completion of remand proceedings, yet it asks this Court to maintain the administrative closure of the Petition until September 30, 2026, more than six years after it issued an order that is supposed to be subject to judicial review. EPA is intent on maintaining 100% discretion over the timing of the remand, arguing that the Court cannot even order a deadline. Meanwhile, Petitioners are deprived of their FIFRA right to judicial review and harm is ongoing. Petitioners ask that this Court impose a deadline on EPA to complete the remanded proceedings and issue a revised Atrazine Interim Registration Review Decision. June 30, 2025, remains an attainable deadline. Even if later than June 30, a court order setting a deadline is justified.

Respectfully submitted this 12th day of March, 2025.

/s/ Stephanie M. Parent
Stephanie M. Parent
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
T: (971) 717-6404
sparent@biologicaldiversity.org

/s/ George A. Kimbrell
George A. Kimbrell
Center for Food Safety
2009 NE Alberta Street, Suite 207
Portland, OR 97211
T: (971) 271-7372
gkimbrell@centerforfoodsafety.org

Sylvia Shih-Yau Wu
Center for Food Safety
303 Sacramento Street, 2nd Floor
San Francisco, CA 94111
T: (415) 826-2770
Email: swu@centerforfoodsafety.org

*Attorneys for Petitioners*

## CERTIFICATE OF COMPLIANCE

I certify that this Reply complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in Century Schoolbook 14-point font using Microsoft Word. I further certify that it complies with Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 1,970 words.

March 12, 2025

/s/ George A. Kimbrell
George A. Kimbrell
Center for Food Safety
*Attorney for Petitioners*

11